IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BARNIE PERDUE, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-00941-M-BK |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the district court's order of reference dated June 29, 2010, this case has been referred to the undersigned for Findings, Conclusions, and Recommendation. The cause is now before the Court on Plaintiff's *Motion for Summary Judgment* (Doc. 25, Exh. 1) and Defendant's *Motion for Summary Judgment* (Doc. 29). For the reasons set forth herein, it is recommended that Defendant's *Motion for Summary Judgment* be **GRANTED**, Plaintiff's *Motion for Summary Judgment* be **DENIED**, and the Commissioner's decision be **AFFIRMED**.

### I. BACKGROUND[1]

**A.     Procedural History**

Barnie Perdue seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying her claim for Disability Insurance Benefits (DIB) under the Social Security Act. In April 2008, Plaintiff protectively filed for DIB, claiming that she had been disabled since September 2007 due to a shoulder and neck injury. (Tr. at 100-04, 126). Her application was denied initially and on reconsideration, and Plaintiff timely requested a hearing

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

before an Administrative Law Judge (ALJ). (Tr. at 64-76). She personally appeared and testified at a hearing held in April 2009. (Tr. at 19-39). In July 2009, the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 12, 17). In January 2010, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. (Tr. at 4-6). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g).

**B.      Factual History**

    **1.      Age, Education, and Work Experience**

Plaintiff was 59 years old at the time of the administrative hearing and had a ninth grade education. (Tr. at 18, 22, 102). She had past relevant work history as a cashier and as a processor in a plastics manufacturing plant. (Tr. at 40).

    **2.      Medical Evidence**

In June 2007, Plaintiff was seen by orthopedist, Dr. Sandy Bidner, for left elbow and arm pain, and Dr. Bidner diagnosed her with left elbow medial epicondylitis (inflammation of the elbow, e.g., tennis elbow) and left bicipital tendinitis (inflammation of the biceps tendons) with impingement syndrome.[2] (Tr. at 207). In August 2007, Plaintiff again saw Dr. Bidner, this time for bilateral shoulder pain which was worse on the left side, dating back to Plaintiff's bilateral arthroscopic shoulder surgery three years earlier. Plaintiff noted that her shoulder particularly hurt with overhead activities and, on examination, her range of motion was limited to 100 degrees of forward elevation and 100 degrees of side abduction, but she had no weakness with

---

[2] All medical terms are defined by reference to *Stedman's Medical Dictionary* (27th ed.), available on Westlaw.

stressing of the rotator cuff or the supraspinatus tendon (the tendon related to the rotator cuff). (Tr. at 205-06). Dr. Bidner assessed Plaintiff as having bilateral shoulder subacromial bursitis (inflammation of the subacromial bursa sac lying between the end of the shoulder blade and the rotator cuff) with impingement. (Tr. at 206).

In November 2007, Plaintiff underwent an MRI of her right shoulder, which revealed a six to seven millimeter labral cyst. (Tr. at 285). The MRI of the left shoulder indicated that Plaintiff had a minimal volume joint effusion (increased fluid in a joint), which could have been posttraumatic or inflammatory in origin. Further, she had a reduced subacromial arch due to a congenitally lower bony acromion (the lateral end of the spine of the shoulder blade) that was asymmetric and could be associated with clinical impingement. (Tr. at 286).

In January 2008, Plaintiff was examined, for purposes of a worker's compensation claim, by a doctor, who stated that Plaintiff reported pain in her shoulders that was aggravated by shoulder motion, especially repetitively bending the shoulder in a weight-bearing stressed position, lifting or carrying, or applying pressure downward on her hands. (Tr. at 289). The doctor diagnosed her with pain in her shoulder and a sprain or strain in her rotator cuff, although the global active range of motion in her shoulders did not appear to be decreased. (Tr. at 290).

In April 2008, Dr. Jack Thomas treated Plaintiff and found that she had tenderness in the shoulder with impingement upon anterior flexion of the shoulder, positive Hawkins sign (pain produced by forced internal rotation of the upper arm at 90 degrees of abduction), and crepitation (crackling) of the subacromial bursa. (Tr. at 280). An x-ray revealed that Plaintiff had thickening in her acromioclavicular joint (the articulation and ligaments between the clavicle and the acromion of the shoulder blade) and mild arthritis as well as enlargement of the greater

3

tuberosity of the humerus (the larger of the two nodules next to the head of the humerus that gives attachment to various muscles) in both shoulders. (Tr. at 281). Dr. Thomas diagnosed Plaintiff with bilateral shoulder impingement syndrome and injected the joint spaces of her shoulders with therapeutic medications. (*Id.*).

Also in April 2008, the chiropractor overseeing Plaintiff's worker's compensation claim noted that she had been diagnosed with bilateral shoulder impingement syndrome and right shoulder internal derangement. (Tr. at 287). In May 2008, Plaintiff saw Dr. Thomas, who noted that while the injections temporarily had helped her, she was in the same amount of pain again and the right shoulder was worse than the left. She had pain in the shoulders on forward flexion, persistent impingement, and bursitis. (Tr. at 324). Dr. Thomas believed that arthroscopy with a decompression of the anterior shoulders bilaterally was inevitable, particularly for the right shoulder. (*Id.*). The following month, Dr. Thomas opined that Plaintiff could return to her job, but would have to do work which did not involve lifting or manual activity with the upper extremities. (Tr. at 358).

A reviewing physician determined that Plaintiff could occasionally lift, carry and pull 20 pounds, frequently lift, carry and pull 10 pounds, and engage in pushing and pulling except as limited by the foregoing weight restrictions, but could only occasionally reach overhead bilaterally secondary to her pain. (Tr. at 343). Plaintiff had a mental status examination with a psychologist in September 2008 to discuss her anxiety and panic attacks. During the interview, Plaintiff stated that she could complete her household chores, care for her personal needs, wash dishes by hand, drive, shop for groceries, and do laundry. (Tr. at 379). In October 2008, a reviewing psychologist determined that Plaintiff could understand and carry out detailed (but not

4

complex) instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in routine work settings. (Tr. at 401).

3. **Hearing Testimony**

At the administrative hearing, Plaintiff testified that she is right-handed, and she believed her left side was the worst of the two in terms of her injuries, although her right arm hurt more on overhead reaching. (Tr. at 27-29). She was not limited in her ability to walk or stand, but was limited in the use of both of her arms, and believed she could only lift five pounds and would still have pain. (Tr. at 27, 29). Plaintiff testified that her pain was a ten on a scale of one to ten almost all the time. (Tr. at 39).

A vocational expert testified that Plaintiff's prior job as a cashier for Walmart was light, semi-skilled work and that a hypothetical person of her age (59) could return to that job. (Tr. at 40, 45). Next, a medical expert testified that Plaintiff's impairments did not meet or equal a Listing, but her consistent complaints of soreness and pain in her shoulders and discomfort with overhead activity meant that such activity should be limited to only occasional. The doctor also added that pushing and pulling objects using her arms should be limited to occasional, but Plaintiff could lift, push, and pull 10 pounds frequently and 20 pounds occasionally as long as the activity occurred below the shoulder level. (Tr. at 47-49). He did not feel that there was any medical basis for a level ten pain as alleged by Plaintiff. The ALJ asked whether Plaintiff could reach in front and to the side occasionally, and the doctor opined that it was only the overhead reaching that was limited. (Tr. at 48-49). The vocational expert then testified that a person with those physical restrictions could be a cashier, which required the ability to frequently reach, handle, finger, talk, hear, occasionally lift and push/pull 20 pounds, frequently lift and push/pull

5

10 pounds, and, in most cashier jobs, did not require overhead reaching. (Tr. at 49-50, 58). Further, even considering Plaintiff's mental limitations, the vocational expert believed that she was capable of being a cashier. (Tr. at 52).

**C.     ALJ's Findings**

The ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform light work, except that she had a limited range of motion in her right arm, in that she could only occasionally push/pull with her right arm and only infrequently use her right arm for overhead motions. (Tr. at 16). The ALJ determined that while Plaintiff's medically determinable impairments reasonably could be expected to cause symptoms, her statements concerning their severity and limiting effects were not credible to the extent they were inconsistent with the ALJ's RFC finding. Specifically, Plaintiff's complaints of pain were not credible and there was no medical basis for it as testified to by the medical expert. (Tr. at 17). The ALJ further found that Plaintiff could perform the mental demands of light work. (*Id.*).

## II. ANALYSIS

**A**.     **Legal Standards**

**1**.     **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d

558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

### 2. Disability Determination

The definition of disability under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Pursuant to 20 C.F.R. § 404.1520(d), if a claimant has an impairment which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment, the claimant is deemed disabled without consideration of age, education, and work experience.

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past,

7

> a finding of "not disabled" must be made.
>
> 5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)). Under the first four steps of the analysis, the burden of proof lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

**B.    Issues for Review**

*1. Whether the ALJ's RFC Finding is Supported by Substantial Evidence*

Plaintiff first argues that the ALJ's RFC finding is not supported because the medical evidence does not support the ALJ's placement of limitations only on Plaintiff's right arm, rather than providing for bilateral limitations. Furthermore, she argues that substantial evidence does not support the ALJ's finding that Plaintiff's ability to reach in front and from side to side was not limited. (Doc. 25, Exh. 1 at 3-7). Additionally, Plaintiff contends that the ALJ provided no explanation for not acknowledging the opinion of treating physician, Dr. Thomas, who opined

8

that Plaintiff should not do any work that requires lifting or manual activity with the upper extremities. (*Id.* at 7-8).

The government admits that the ALJ should have included bilateral limitations in his RFC finding, but maintains that the omission was harmless error because the medical expert testified that pushing, pulling, and overhead reaching would be limited to occasionally, and no impairment existed to support a pain level of ten as Plaintiff alleged. Further, the vocational expert testified that Plaintiff could work as a cashier under the limitations described by the medical expert. (Doc. 30 at 6-8). The government also contends that, despite Plaintiff's argument, there was no basis for the ALJ to include limitations on her ability to reach in front of her and from side to side because the medical expert did not testify that she was so limited. (*Id.* at 8). Further, the ALJ's failure to give no weight to Dr. Thomas's opinion was rooted in good cause because (1) the MRI of Plaintiff's left shoulder was largely normal and contradicted Dr. Thomas's opinion that Plaintiff could not lift or perform manual activities; (2) his own treatment notes indicate that Plaintiff had no atrophy in her left shoulder, her muscle strength was good on external rotation and abduction, and her right shoulder was worse than her left; and (3) the medical expert's testimony contradicted Dr. Thomas's opinion and was better supported by the medical record. (*Id.* at 8-9).

The RFC is an assessment, based on all of the relevant evidence, of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a). The RFC is considered by the ALJ, along with the claimant's age, education and work experience, in determining whether the claimant can work. 20 C.F.R. § 404.1520(f). The ALJ has the sole responsibility for evaluating a claimant's RFC based on the record as a whole. 20 C.F.R.

§ 404.1546(c). The ALJ makes the RFC determination by considering the claimant's ability to lift, sit, stand, push, pull, walk, and the like. 20 C.F.R. § 404.1545(b). A determination of the claimant's RFC is made at both the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. § 404.1520(e), (f). Light work involves lifting up to 20 pounds and frequently lifting or carrying up to 10 pounds. A job also is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

As the government concedes, the ALJ's RFC finding is not supported insofar as the ALJ should have included limitations on the use of both of Plaintiff's arms given the evidence in the medical record about the bilateral limitations. However, the error was harmless because substantial evidence still supports the ALJ's decision to deny Plaintiff DIB. *See Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (employing a harmless error analysis in a disability case). First, Plaintiff's argument that substantial evidence does not support the ALJ's finding that she had the ability to reach in front and from side to side is meritless. Plaintiff told her doctors that her shoulder mainly hurt with overhead activities, repetitively bending the shoulder in a weight-bearing stressed position, or pushing down on her hands. (Tr. at 205-06, 289). Different examinations revealed her range of motion to be fairly good at 100 degrees on forward elevation and abduction, while MRIs demonstrated only a small cyst in the right shoulder and a small amount of fluid in her joint and a reduced subacromial arch on the left shoulder. (Tr. at 280, 285-86, 324). The medical expert testified that Plaintiff's overhead activity should be limited to only occasional, but Plaintiff could lift, push, and pull 10 pounds frequently and 20 pounds occasionally, as long as the activity occurred below the shoulder level. (Tr. at 47-49).

When asked whether Plaintiff could reach in front and to the side occasionally, the expert opined that it was only the overhead reaching that was limited. (Tr. at 48-49).

This is supported by the record, which reveals that Plaintiff's main source of pain was when she attempted to raise her arms overhead or flex or abduct her shoulders significantly. There is thus substantial evidence in the record to support the ALJ's ruling that Plaintiff is able to move her arms from side to side and reach in front of her as long as that activity occurs below the shoulder level. *Johnson*, 864 F.2d at 343-44.

As for Plaintiff's contention that the ALJ wrongly rejected the opinion of her treating physician, who opined that Plaintiff should not do any manual labor involving her arms, her arguments cannot withstand the substantial evidence standard of review. *Johnson*, 864 F.2d at 343-44. "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Every medical opinion is evaluated regardless of its source, but the Commissioner generally gives greater weight to opinions from a treating physician. 20 C.F.R. § 404.1527(d). The treating physician's opinions are not conclusive and may be assigned little or no weight when good cause is shown. *Newton,* 209 F.3d at 456. Good cause exists when the treating physician's opinions are so brief and conclusory that they lack persuasive weight, when they are not supported by medically accepted techniques, or when the evidence supports a different conclusion. *Id.*

In this case, the ALJ's decision to give little or no weight to Dr. Thomas's conclusory opinion that Plaintiff should not perform manual labor using her arms was based on good cause because (1) the objective medical evidence, namely Plaintiff's MRIs and x-ray, revealed relatively minimal problems with her shoulders; (2) Plaintiff noted that her shoulders mainly hurt

with overhead activities and, on one prior examination, her range of motion was 100 degrees of forward elevation and 100 degrees of abduction; (3) while Plaintiff reported pain in her shoulders that was aggravated by repetitive bending of the shoulder in a weight-bearing stressed position, at that time, her range of motion was normal; and (4) Plaintiff was able to complete her household chores, care for her personal needs, wash dishes by hand, drive, shop for groceries, and do laundry. Further, Dr. Thomas himself noted that Plaintiff's shoulder pain only was present upon flexion of the shoulder, which by definition, involves raising the arm and shoulder upward toward the front. He also noted that she had positive Hawkins sign, which demonstrated pain when her upper arm was held at a 90 degree angle to her body and pushed, which also involves a raised shoulder. Thus, the medical evidence in the record supports the ALJ's conclusion that Plaintiff had the RFC to perform light work as limited by the ALJ. *Id.*

  *2.  Whether the ALJ's Finding Regarding Past Relevant Work is Supported*

Plaintiff next argues that the ALJ's finding that she can perform her past relevant work as a cashier is not supported by substantial evidence because the ALJ did not include limitations to both of her shoulders. (Doc. 25, Exh. 1 at 8). Furthermore, Plaintiff claims that the vocational expert's testimony indicates that Plaintiff could not work as a cashier because her RFC limited her push/pull ability to occasionally doing so at the light level, while cashier work requires the ability to push and pull frequently. (*Id.* at 9-10).

The government responds that the vocational expert testified that a cashier job required frequent pushing and pulling of up to ten pounds and occasional pushing and pulling of up to 20 pounds, which were within the medical expert's limitations on Plaintiff's abilities. (Doc. 30 at 5-6).

To determine whether a claimant can perform past relevant work, the ALJ must assess the physical demands of the job by considering the description of the work actually performed or as generally performed in the national economy. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). It is the claimant's burden to prove an inability to perform her former work. *Hollis v. Bowen*, 837 F.2d 1378, 1386 (5th Cir. 1988). The ALJ must determine both the physical demands of the particular type of work that the claimant has done and compare those demands with the claimant's present capabilities. *Id.*

As an initial matter, the ALJ's failure to include limitations on both of Plaintiff's shoulders is harmless error for the reasons set forth under Issue 1. *Anderson*, 887 F.2d at 634. The medical expert testified that Plaintiff could lift, push, and pull 10 pounds frequently and 20 pounds occasionally as long as the activity occurred below the shoulder level as it was only overhead reaching that was limited. (Tr. at 47-49). This is essentially a finding that Plaintiff could do a modified version of light work. The vocational expert testified as to how cashier work generally is performed in the national economy, and then opined that a person with Plaintiff's physical restrictions could be a cashier, which would require her ability to frequently reach, handle, finger, talk, hear, occasionally lift, push and pull 20 pounds, frequently lift, push and pull 10 pounds, and generally did not require overhead reaching. (Tr. at 49-50, 58). The ALJ then concluded that Plaintiff could work as a cashier within those restrictions, in accordance with *Villa*. 895 F.2d at 1022. Plaintiff thus did not prove her inability to perform her former work. *Hollis*, 837 F.2d at 1386. Accordingly, the ALJ's finding that Plaintiff could perform work as a cashier is supported by substantial evidence. *Greenspan*, 38 F.3d at 236.

### III.  CONCLUSION

For the foregoing reasons, the undersigned recommends that Defendant's *Motion for Summary Judgment* (Doc. 29) be **GRANTED**, Plaintiff's *Motion for Summary Judgment* (Doc. 25, Exh. 1) be **DENIED**, and the Commissioner's decision be **AFFIRMED**.

**SIGNED** April 6, 2011.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE